IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DON C. PURLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 5110 |
| | ) | |
| BENSENVILLE PUBLIC SAFETY DEPARTMENT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff Don C. Purley brought the present Complaint alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., against the Village of Bensenville and Frank Kosman, the Chief of the Bensenville Police Department. Before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants Defendants' motion.

**BACKGROUND**

**I. Introduction**

Plaintiff Don C. Purley is a police officer employed by the Village of Bensenville Police Department. (R. 46-1, Defs.' Rule 56.1 Stmt. Facts, ¶ 1.) Defendant Frank Kosman is the Chief of the Village of Bensenville Police Department and has held this position since May 2002. (*Id.* ¶ 2.) On March 17, 2004, Officer Purley was involved in a shooting where he wounded an unarmed Bensenville resident, Ted Wronkiewicz. (*Id.* ¶ 4.)

## II. Major Crimes Task Force Investigation

After the shooting, Chief Kosman called the DuPage County Sheriff's Office requesting that the DuPage County Major Crimes Task Force ("MCTF") investigate the shooting. (*Id.* ¶ 5; R. 67-1, Pl.'s Rule 56.1 Stmt. Add'l Facts ¶ 2.) On March 18, 2004, the MCTF interviewed Officer Purley about the Wronkiewicz shooting. (Defs.' Stmt. Facts ¶ 6.) During the MCTF interview, Officer Purley described the conditions around the shooting incident stating that it was pitch black out and that it was so dark that he could not describe the individual's clothing and could not tell the individual's gender. (*Id.* ¶ 7.) In addition, although Officer Purley saw an object in the victim's hand that he thought was a gun, the object turned out to be a radio. (*Id.* ¶ 8.) The MCTF conducted a follow-up interview of Officer Purley on July 7, 2004 and the relevant MCTF reported stated that Officer Purley:

> indicated that it was so dark out that at no time could he tell who Wronkiewicz was. When asked to explain and when asked other exploratory questions, Purly [sic] had indicated he could not tell the gender of this person, or race or ethnicity. When questioned as to why he felt this was a gun, Purly [sic] indicated it was because of the way the victim pointed this. He did say that he could not tell from visual characteristics that this object was indeed a gun.

(*Id.* ¶ 9.)

## III. Fitness-For-Duty Evaluations

After the shooting, Chief Kosman placed Officer Purley on administrative leave. (*Id.* ¶ 11.) On April 14, 2004, at the request of Chief Kosman, Dr. Avrum Mendelsohn, a licensed clinical psychologist, performed a fitness-for-duty evaluation of Officer Purley. (*Id.* ¶ 12; Pl.'s Stmt. Facts ¶ 5.) Under the "mental ability" portion of the evaluation, Dr. Mendelsohn stated:

> In the area of visual perceptual skills, Mr. Purley scored below minimal standards. This test was administered to determine his ability to observe in a patrol situation and to distinguish objects. Two tests of visual perception were

> administered. Both tests were in the borderline range. This may account for some misperception during the shooting incident.

(Defs.' Stmt. Facts ¶ 13.) Dr. Mendelsohn also concluded that the "tests of visual perception skills indicate a shortcoming in this area. This means that in a patrol situation, he may mistakenly identify objects." (*Id.* ¶ 14.) Dr. Mendelsohn further concluded that "[t]he candidate's mental ability skills indicate that he has adequate intelligence with which to function as a Bensenville Patrol Officer." (*Id.*) Finally, Dr. Mendelsohn determined that "Mr. Don Purley is qualified to return to work at this time." (Pl.'s Stmt. Facts ¶ 5.)

In November 2004, Chief Kosman requested that Dr. Leonard Kosiol, a clinical neuropsychologist, perform a second fitness-for-duty examination of Officer Purley. (*Id.* ¶ 28.) Dr. Koziol concluded that "tests results did not provide support for the conclusion of [Officer Purley] demonstrating any essential visual-perceptual-spatial information processing deficits." (*Id.*) Dr. Koziol also concluded that "[t]here was nothing in his pattern of cognitive test results that would immediately or specifically impact upon [Officer Purley's] ability to return to duty as a police officer." (*Id.*)

**IV. August 2004 Incident**

Subsequent to his initial fitness-for-duty evaluation, but prior to the completion of the MCTF investigation, Chief Kosman changed Officer Purley's work status from administrative leave to administrative duties. (Defs.' Stmt. Facts ¶ 16.) Under this work status, Officer Purley performed desk assignments at the police station without going on patrol or performing follow-up assignments outside of the police station. (*Id.*; Pl.'s Stmt. Facts ¶ 19.)

In August 2004, while Officer Purley remained assigned to administrative duties, an incident took place in which Sergeant Robert Fuja asked Officer Purley to obtain certain witness

statements. (Defs.' Stmt. Facts ¶ 17.) That incident culminated in Officer Purley filing internal charges claiming that Sergeant Fuja was intoxicated on duty and that Sergeant Fuja struck Purley on the shoulder. (*Id.* ¶ 18.) At Chief Kosman's direction, Sergeant Lustro, who conducts internal affairs investigations, investigated the August 2004 incident involving Sergeant Fuja and Officer Purley. (Pl.'s Stmt. Facts ¶¶ 11, 12.) Sergeant Lustro made findings regarding policy violations by Sergeant Fuja, but made no findings regarding any policies violated by Officer Purley. (*Id.* ¶ 14.) Chief Kosman, however, made his own findings concerning the August 2004 incident concluding that Officer Purley violated Department Policy 315.01, General Conduct on Duty/Performance of Duty, because Purley failed to perform duties as directed by a superior officer, namely, obtaining the witness statements as directed by Sergeant Fuja. (*Id.* ¶ 15; Defs.' Stmt. Facts ¶ 21.) Chief Kosman also issued a verbal reprimand to Sergeant Fuja for using obscene language to Officer Purley. (Defs.' Stmt. Facts ¶ 21.)

## V. DuPage County State's Attorney's Review of the Shooting Incident

On August 31, 2004, DuPage County State's Attorney Joseph Birkett concluded his office's review of the available evidence regarding the March 17, 2004, shooting incident. (Defs.' Stmt. Facts ¶ 22.) State's Attorney Birkett concluded that there was insufficient evidence to bring a criminal prosecution against Officer Purley for shooting Wronkiewicz. (*Id.* ¶ 23.) Moreover, State's Attorney Birkett stated in a letter to Chief Kosman:

> I believe Officer Purley exercised questionable judgment in drawing and firing his weapon. I believe additional use of force training and additional administrative action may be appropriate. While Officer Purley maintains he yelled "stop" twice, at no time did he provide a verbal warning that he was the police as required by your Department policy.

(*Id.*)

## VI. Internal Investigation After State's Attorney's Letter

After receiving the State's Attorney's Letter, which was approximately six months after the shooting incident, Chief Kosman assigned Sergeant Lustro to conduct an internal investigation into the conduct of Officer Purley in the Wronkiewicz shooting. (*Id.* ¶ 24; Pl.'s Stmt. Facts ¶ 23.) Sergeant Lustro specifically conducted the investigation of Officer Purley to determine whether his actions were in compliance with Departmental Regulation 330.01 regarding the use of a firearm. (Pl.'s Stmt. Facts ¶ 24.) After completing his investigation, Sergeant Lustro exonerated Officer Purley concluding that his conduct did not violate section 330.01. (*Id.* ¶ 25.)

## VII. Disciplinary Charges with Bensenville's Board of Fire & Police Commissioners

Despite Sergeant Lustro's finding, in November of 2004 Chief Kosman filed disciplinary charges against Officer Purley with Bensenville's Board of Fire and Police Commissioners (the "Board") asking that Officer Purley be suspended for thirty days based on his conduct in the Wronkiewicz shooting. (*Id.* ¶¶ 26, 27; Defs.' Stmt. Facts ¶ 31.) Meanwhile, Officer Purley returned to active duty on December 17, 2004, after which the Board conducted hearings concerning Chief Kosman's disciplinary charges on February 2 and 3, 2005. (Pl.'s Stmt. Facts ¶ 29; Defs.' Stmt. Facts ¶¶ 32, 33.) After the hearing, the Board found that Officer Purley violated: (1) Department Rule 330.01 restricting the use of deadly force; (2) Department Rules 330.03 and Rule 305.03 by handling his firearm in a careless, negligent, or reckless manner; and (3) Department Rule OPS 7 by failing to properly identify himself prior to utilizing deadly force. (Defs.' Ex. R, Board's Substantive Findings, at 11.) The Board further concluded that "Officer Purley made several mistakes which compounded upon each other and resulted in an extremely dangerous situation for the officer, the victim and the public at large." (*Id.*) The Board thus

suspended Officer Purley for thirty days. (Defs.' Stmt. Facts ¶ 37.) Officer Purley sought administrative review of the Board's findings to the Circuit Court of DuPage County, although he did not appeal the Circuit Court's affirmance of the suspension to the Illinois Appellate Court. (*Id.* ¶¶ 38, 39.)

**VIII. Officer Purley's EEOC Charges**

In his first EEOC charge of discrimination, Officer Purley based his race discrimination claim on Chief Kosman disciplining him for violating Department Policy 315.01 for failing to perform duties as directed by a superior officer, namely, Sergeant Fuja. (Defs.' Stmt. Facts ¶ 29; Defs.' Ex. O, Sept. 30, 2004, EEOC charge.) In his amended EEOC charge, Officer Purley alleged that Chief Kosman retaliated against him for filing his first EEOC charge by ordering the second fitness-for-duty evaluation that took place in November of 2004. (*Id.* ¶ 30; Def.'s Ex. P, Nov. 16, 2004, EEOC charge.) Officer Purley also amended his original EEOC charge basing his race discrimination claim on Defendants' refusal to return him to active duty in a timely manner. (Def.'s Ex. P, Nov. 16, 2004, EEOC charge.) Finally, on April 28, 2005, Officer Purley filed an additional charge with the EEOC alleging that Chief Kosman retaliated against him for filing the amended EEOC charge by filing disciplinary proceedings with the Bensenville Board of Fire and Police Commissioners. (Defs.' Stmt. Facts ¶ 34; Def.'s Ex. S, Apr. 28, 2005, EEOC charge.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 127 S.Ct. at 1776.

## ANALYSIS

## I. Title VII Race Discrimination Claim[1]

### A. Legal Standards

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

---

[1] Although Officer Purley conflates his race discrimination and retaliation arguments, the Court addresses his claims separately due to the variance in the standards controlling Title VII race discrimination and retaliation claims and for the sake of clarity.

Under Title VII, Officer Purley may prove intentional race discrimination by either the direct or indirect method of proof as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006).

Officer Purley chooses to present his race discrimination claim under the *McDonnell-Douglas* indirect method of proof. Under this method, Officer Purley must first establish a prima facie case of intentional discrimination by showing that: (1) he is a member of a protected class; (2) he reasonably performed to the Bensenville Police Department's legitimate job expectations; (3) the police department took materially adverse employments action against him; and (4) the police department treated him differently than similarly situated employees outside of his protected class. *See McDonnell Douglas*, 411 U.S. at 802; *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007).

If Officer Purley establishes a prima facie case of discrimination, the burden of production shifts to the Bensenville Police Department to articulate a legitimate, non-discriminatory reason for its actions. *See McDonnell Douglas*, 411 U.S. at 802; *Fane*, 480 F.3d at 538. If the police department meets this burden, Officer Purley must then show that the police department's proffered explanation is pretext for discrimination. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981); *Fane*, 480 F.3d at 538. The ultimate burden of persuasion, however, always remains with Officer Purley. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 517-18, 113 S. Ct. 2742, 125 L.Ed.2d 407 (1993); *Fane*, 480 F.3d at 538.

**B. Similarly Situated Comparators**

Viewing the evidence in a light most favorable to Officer Purley, his race discrimination claim fails because he has not presented sufficient evidence to fulfill the fourth prima facie element, namely, that the Bensenville Police Department treated similarly situated non-African-Americans better than he. To determine whether employees are similarly situated, the Court's inquiry is a flexible one that considers "all relevant factors, the number of which depends on the context of the case." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000)). "An employee is similarly situated to a plaintiff if the two employees deal with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Fane*, 480 F.3d at 540; *see also Perez v. Illinois* 488 F.3d 773, 776 (7th Cir. 2007) ("A similarly situated employee is one who is comparable to plaintiff in all material respects). As the Seventh Circuit recently explained "the purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable: complaints about discrimination." *Humphries*, 474 F.3d at 405. Put differently, the purpose of the similarly situated test "is to determine whether there are enough common factors between a plaintiff and a comparator – and few enough confounding ones – to allow for a meaningful comparison in order to divine whether discrimination was at play." *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007).

### 1. Bensenville Police Officer X[2]

Officer Purley presents evidence in support of his race discrimination claim regarding Defendants' alleged refusal to return him to active duty in a timely manner. More specifically, Officer Purley has set forth evidence that Chief Kosman requested a white male police officer at the Bensenville Police Department have a fitness-for-duty evaluation and that this officer, Officer X, was returned to active duty immediately after the evaluation. (Pl.'s Stmt. Facts ¶¶ 31, 32.) Specifically, the record reveals that Chief Kosman requested a fitness-for-duty evaluation for Officer X because he "was involved in a verbal altercation where he made vague threats to kill a political contestant after he was involved in an argument." (R. 73-1, Defs.' Resp. to Pl.'s Add'l Facts ¶ 32; Pl.'s Ex. 17, at 1290.) Thus, Chief Kosman ordered the fitness-for-duty evaluation to determine if Officer X was an actual threat to others. (Pl.'s Ex. 17, at 001292.) Dr. Mendelsohn evaluated Officer X and concluded that he was a weak observer in a patrol situation and was unaware of what was going on around him. (*Id.* ¶ 34.) In the end, Dr. Mendelsohn concluded that Officer X was fit for duty and Chief Kosman returned him to active duty right after his evaluation. (*Id.* ¶ 35.)

Although Dr. Mendelsohn reported that Officer X was a weak observer and that Officer Purley had problems with his visual perceptual skills, the officers' similarities end there. First, Chief Kosman ordered Officer X's evaluation because of a threat he made which was not related to his observations on the job or his job responsibilities. Chief Kosman, on the other hand, ordered Officer Purley's fitness-for-duty examination because he did not see, but nonetheless

---

[2] The identity of Officer X is redacted because Officer Purley filed his Rule 56.1 Statement of Facts under seal.

shot, an unarmed resident of Bensenville. Thus, Officer X and Officer Purley did not engage in similar conduct. *See Fane,* 480 F.3d at 540. Further, there are differentiating circumstances that distinguish Chief Kosman's treatment of Officer X from Officer Purley concerning the delay of Officer Purley's return to active duty, including the MCTF investigation into the shooting, the DuPage County State's Attorney's review, the Board of Fire and Police Commissioners' proceedings, and the police department's internal investigation. On the other hand, there is no evidence in the record that similar investigations were ongoing in Officer X's case. Therefore, not only was Officer X's conduct different, but Officer X is not similarly situated to Officer Purley because there are differentiating circumstances distinguishing Chief Kosman's treatment of them, namely, the ongoing investigations into the Wronkiewicz shooting. *See Fane,* 480 F.3d at 540. On a final note, nothing in the record indicates that Officer X's fitness-for-duty evaluation occurred during the same time period as the alleged discrimination against Officer Purley. *See Keri v. Board of Trs. of Purdue Univ.*, 458 F.3d 620, 644 (7th Cir. 2006) ("Plaintiff must establish that the similarly situated employees were treated more favorably at the time of the alleged discrimination against him."). Because Officer Purley has not set forth evidence raising a triable issue that Officer X is similarly situated to him in all material respects, Officer X is not a sufficient comparator.

**2. Bensenville Police Sergeant Mark Selvik**

Next, Officer Purley offers evidence of another Bensenville police officer who was involved in a shooting incident. More specifically, Officer Purley relies upon a 1990 incident involving a white Bensenville police officer, Sergeant Mark Selvik, who shot a civilian, to establish the similarly situated element of his prima facie race discrimination case. *See*

*Palmquist v. Selvik,* 111 F.3d 1332 (7th Cir. 1997). The facts in *Palmquist* reveal[3] that on April 23, 1990, a resident of Bensenville, Paul Palmquist, broke his neighbor's windows and threatened to kill a paper deliverer, after which the newspaper deliverer called the Bensenville police. *Id.* at 1334. When the police arrived at Palmquist's apartment, they found him

> shouting wildly, brandishing a muffler pipe and a fan blade. Palmquist defied the officers' requests to calm down and drop the weapons. He told the officers they would have to kill him. When they attempted to arrest him for breaking the windows, he refused to be taken. As the officers approached Palmquist, he swung the pipe at one of them and landed a blow. After Palmquist swung at the officers again, another officer [Sergeant Selvik] fired numerous shots. Palmquist was killed.

*Id.; see also* Selvik Aff. at ¶¶ 3-4.

After the Palmquist shooting, Sergeant Selvik was not subjected to discipline or an extended period of desk duty and was back on active duty within a week or two. (Pl.'s Stmt. Facts ¶ 38.) The Bensenville Police Chief at that time, Chief Toomey, returned Sergeant Selvik to active duty after the DuPage County State's Attorney's Office completed its investigation and after Sergeant Selvik's fitness-for-duty evaluation. (Defs.'s Resp. to Pl.'s Add'l Facts ¶ 38.)

Regardless of when Sergeant Selvik returned to active duty, the Palmquist shooting is substantially different from the Wronkiewicz shooting. Specifically, Officer Purley shot Wronkiewicz, who was unarmed. There is no evidence in the record that Wronkiewicz attacked

---

[3] Officer Purley does not set forth evidence concerning the Palmquist shooting, but instead asks the Court to take judicial notice of the Seventh Circuit's decision in *Palmquist v. Selvik*, 111 F.3d 1332 (7th Cir. 1997), which the Court does pursuant to well-established law that other courts' decisions are the proper subject of judicial notice. *See Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996) ("it is a well-settled principle that the decision of another court or agency, including the decision of an administrative law judge, is a proper subject of judicial notice."). Moreover, Sergeant Selvik submits an affidavit regarding the Palmquist incident which – in essence – states the same facts as articulated by the Seventh Circuit. (*See* Defs.' Ex. W, Selvik Aff.)

Officer Purley or that Wronkiewicz made any threats to Officer Purley. Sergeant Selvik, on the other hand, was confronted by Palmquist who was shouting wildly and brandishing a muffler pipe. *Palmquist*, 111 F.3d 1334-35. After Sergeant Selvik asked Palmquist to put the pipe down and lie on the ground, Palmquist called Sergeant Selvik a "Viet Cong colonel" shouting that he was not going to be taken alive and that the officers would have to kill him. *Id*. at 1336. When Sergeant Selvik attempted to arrest Palmquist, he refused to be taken and eventually started swinging the pipe over his head and swung it at Sergeant Selvik after hitting another police officer. *Id.*

Moreover, Sergeant Selvik is not similarly situated to Officer Purley because they had different supervisors at the time of the relevant shootings. *See Fane,* 480 F.3d at 540. Chief Kosman was the Chief of the Bensenville Police when Officer Purley shot Wronkiewicz. The Bensenville Police Chief at the time of the Palmquist shooting was Chief Toomey. *See Palmquist,* 111 F.3d at 1344-45; *see also* Selvik Aff. ¶¶ 5, 6. Also, Officer Purley and Sergeant Selvik had different positions and ranks at the police department. Therefore, Sergeant Selvik is not similarly situated to Officer Purley in their positions, supervisors, and conduct. *See Fane,* 480 F.3d at 540; *see also Perez*, 488 F.3d at 777. Finally, the Palmquist shooting occurred well over a decade before Officer Purley shot Wronkiewicz. *See Keri*, 458 F.3d at 644 (similarly situated employee must be treated more favorably at time of alleged discrimination against plaintiff). The Court thus grants Defendants' summary judgment motion as to Officer Purley's race discrimination claim because he has failed to set forth evidence raising a genuine issue of material fact regarding the similarly situated element of his prima facie case.

## II. Title VII Retaliation Claim

Under Title VII, it is unlawful for an "employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Title VII's "anti-retaliation provision seeks to secure th[e] primary objective [of] preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2412 (2006).

To overcome the Defendants' motion for summary judgment, Officer Purley may proceed under the direct or indirect methods of establishing retaliation. *See Humphries*, 474 F.3d at 404; *see also Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Officer Purley seeks to establish his retaliation claim under the indirect method of proof. To do so, Officer Purley must establish a prima facie case of retaliation by offering evidence that: (1) he engaged in protected activity; (2) he suffered an adverse action; (3) he met the police department's legitimate job expectations; and (4) he was treated less favorably than similarly situated employees who did not engage in protected activity. *See Brewer v. Board of Tr. of Univ. of Ill.*, 479 F.3d 908, 923 (7th Cir. 2007).

In support of the similarly situated prong, Officer Purley contends that other officers who did not complain of discrimination were treated more favorably than he. Officer Purley, however, fails to set forth any evidence supporting this argument except for the evidence pertaining to Officer X and Sergeant Selvik. As discussed above, Officer X is not similarly

situated to Officer Purley because Officer X did not engage in the same conduct as Officer Purley and there were differentiating circumstances distinguishing the police department's treatment of them, namely, the ongoing investigations into the Wronkiewicz shooting. *See Fane,* 480 F.3d at 540; *see also Tomanovich v. City of Indianapolis*, 457 F.3d 656, 667 (7th Cir. 2006). Further, Sergeant Selvik is not similarly situated to Officer Purley in their positions, supervisors, or conduct. *See Fane*, 480 F.3d at 540; *see also Perez,* 488 F.3d at 777.

Meanwhile, although Officer Purley states that "other officers" who did not complain of discrimination were treated more favorably than he, Officer Purley does not set forth any evidence that other Bensenville police officers who did not engage in a protected activity, such as filing an EEOC charge, were treated more favorably than he under the same or similar circumstances. In fact, Officer Purley never names who these "other officers" are. Without more information, the Court cannot make a meaningful comparison between Officer Purley and these unnamed officers. *See Radue*, 219 F.3d at 619 (similarly situated element requires plaintiff to demonstrate shared "common features essential to a meaningful comparison"). Accordingly, Officer Purley's retaliation claim fails because he has not set forth evidence supporting the similarly situated element of his prima facie case. *See Roney v. Illinois Dep't of Transp*., 474 F.3d 455, 459 (7th Cir. 2007) ("Failure to satisfy any one element of the prima facie case is fatal to an employee's retaliation claim."). Therefore, the Court grants Defendants' summary judgment motion as to Officer Purley's Title VII retaliation claim.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c).

Dated: August 20, 2007

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**